WILLIAM H. CROOK, JR., Appellant, v. JACOB L. LIPTON,
Doing Business under the Name of "ACME IRON & STEEL
COMPANY," Respondent.

First Department, May 3, 1918.

Sale — action for breach of contract — defect in quality — attach-
ment — motion to vacate upon original papers — sufficiency of
moving papers.

Where a motion to vacate a warrant of attachment is made solely upon
the original papers upon which a *prima facie* case is made out, sworn
to on personal knowledge, and there is no denial, the court will uphold
the attachment and will not be over technical in order to vacate it.

Where in an action to recover damages for breach of contracts between
defendant and plaintiff's assignor for the sale by defendant of brass
turnings of a designated quality, the main issue is as to the defective
quality of the turnings supplied, an affidavit of the president of plain-
tiff's assignor, who states upon his personal knowledge that "When the
car containing said turnings arrived  *  *  *  the contents was inspected
and analyzed, and disclosed that the brass turnings contained lead far in
excess of .05%, and substantially failed to comply with the requirements
of said contract," is sufficient to sustain a warrant of attachment, although
there is no allegation that the affiant made the inspection and analysis
or was competent so to do, there being no answer denying the essential
allegations in the complaint or proof tending to show that the goods
shipped were of contract quality.

Although the contract shows that the material was to be "inspected,
sampled and analyzed," the papers are not defective because of a failure
to show that the material was also "sampled."

An allegation that the material was held for a reasonable time before being
sold at auction sufficiently shows that when the plaintiff's assignor called
on the defendant to remove the material and repay the purchase price
and its expenses, the plaintiff's assignor actually had the material ready
for removal.

Since the contracts provided that "Should the quality of the material in
any way vary from that specified in the contract, the Seller is to be
immediately notified and is to immediately remove the material, paying
its value and any expenses that the Buyer may have been put to in regard
to it," if the seller refused to remove, the purchaser was not bound to
store it indefinitely, and the proper method of disposing of it was by an
auction sale.

It was not necessary to allege all of the facts with respect to the manner
in which the auction sale was conducted, especially since there was no
claim that it was not properly conducted.

A failure of proof as to certain items of damage does not justify vacating the attachment, there being proof of substantial damage outside of said items.

In an allegation "That said defendant is justly and truly indebted to the plaintiff in the sum of $7,384.18, for damages for breach of contract, other than a contract to marry, which amount is now due and owing from the defendant to the plaintiff over and above all counterclaims known to the plaintiff upon the following facts, to wit," the words "upon the following facts" do not refer to the counterclaims known to the plaintiff, but refer to the plaintiff's right to recover the damages.

APPEAL by the plaintiff, William H. Crook, Jr., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 2d day of April, 1918, as resettled, granting defendant's motion to vacate a warrant of attachment herein.

*Francis Sims McGrath* of counsel [*Bayne & McGrath,* attorneys], for the appellant.

*Joseph J. Corn* of counsel [*Eisman, Levy, Corn & Lewine,* attorneys], for the respondent.

SHEARN, J.:

The action was brought to recover damages for breach of two separate contracts between defendant and plaintiff's assignor, each being for the sale by defendant of brass turnings of a designated quality. The attachment was issued on April 26, 1917, and the motion to vacate, which was made solely upon the original papers, was not made until March 9, 1918.

The most serious ground of attack upon the sufficiency of the papers is the proof with respect to the vital matter upon which the entire cause of action turns, namely, as to the defective quality of the brass turnings supplied. This proof consists of an affidavit of the president of plaintiff's assignor, who states: "When the car containing said turnings arrived * * * the contents was inspected and analyzed, and disclosed that the brass turnings contained lead far in excess of .05%, and substantially failed to comply with the requirements of said contract, Exhibit I, under which said turnings had been shipped and paid for." While this state-ment is made as a matter of personal knowledge, there is no

allegation that the affiant made the inspection and analysis or was competent so to do. If the defendant had interposed an answer denying the essential allegations in the complaint, or if he had submitted any proof tending to show that the goods shipped were of contract quality, there is no doubt that plaintiff's proof, without supplemental affidavits showing who made the analysis and what its results were, would be insufficient to sustain the attachment. But the rule is that where the motion to vacate is made solely upon the original papers, and where on those papers a *prima facie* case is made out, sworn to on personal knowledge, the court will uphold the attachment. (*Stiner* v. *Tennessee Copper Co., No. 1*, 176 App. Div. 209.) If a *prima facie* case is made out, that should be sufficient until there is some denial. Then the plaintiff may properly be required to fortify his allegations by the production of satisfactory proof.

Many other grounds for attacking the papers are set forth, but I think that they are all practically disposed of upon the ground above stated, *i. e.*, that a *prima facie* case is made out and there is no denial and, therefore, the court will not be over-technical in order to vacate the attachment. For example, the contract shows that the material was to be "inspected, sampled and analyzed." It is claimed that the papers are defective because, even if they show that the material was inspected and analyzed, they do not show that it was *sampled*. There is not much substance in this, for the contract evidently contemplated that an inspection and analysis of samples would suffice, instead of requiring an inspection and analysis of all the material; yet the plaintiff's papers show that all of the material was inspected and analyzed.

It is claimed that the papers are defective in failing to show that when the plaintiff's assignor called on the defendant under the contract to remove the material and repay the plaintiff's assignor the purchase price and its expenses in connection therewith, the plaintiff's assignor actually had the material ready for removal. This is sufficiently shown, for it is alleged that the material was held for a reasonable time before being sold at auction.

It is further claimed that the papers do not contain sufficient proof that an auction sale was the proper method of

resale by which the plaintiff's assignor could measure its loss, or that such auction sale was duly or properly conducted. These contracts provide their own special rule for damage: " Should the quality of the material in any way vary from that specified in the contract, the Seller is to be immediately notified, and is to immediately remove the material, paying its value and any expenses that the buyer may have been put to in regard to it." It seems clear that under such a contract, if the seller refused to remove the material, the purchaser would not have to store it indefinitely, and that the proper method of disposing of it would be at an auction sale. Neither was it necessary to allege all of the facts with respect to the manner in which the auction sale was conducted, especially where there is no claim that it was not properly conducted.

It is said that there is no proof of certain items of damage, referring particularly to attorney's fees and expenses. Even if this were so, it would not justify vacating the attachment, for there is proof of substantial damage outside of these particular items.

Finally, it is said that there is no particular allegation that the sum claimed to be due is over and above all counterclaims, because the allegation is in this form: " That said defendant is justly and truly indebted to the plaintiff in the sum of $7,384.18 for damages for breach of contract other than a contract to marry, which amount is now due and owing from the defendant to the plaintiff over and above all counterclaims known to the plaintiff upon the following facts, to wit." The point is that the words " upon the following facts " refer to the counterclaims known to the plaintiff. Clearly they do not, but refer to the plaintiff's right to recover the damages, which claim is based upon the facts thereinafter set forth.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion to vacate denied, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.